**AMERICAN HONDA MOTOR CO., INC., Plaintiff,**

v.

**BERNARDI'S, INC. d/b/a Bernardi Honda Defendant.**

**American Honda Motor Co., Inc., Plaintiff,**

v.

**Richard Lundgren, Inc., d/b/a Lundgren Honda, Defendant.**

**Nos. 98–10690–MLW, 98–40061.**

United States District Court, D. Massachusetts.

May 19, 1999.

Richard A. Gargiulo, Marielise Kellym Gargiulo, Rudnick & Gargiulo, Boston, MA, for plaintiff.

Stephanie A. Bray, Richard B. McNamara, Jean M. Long, Wiggin & Nourie Manchester, NH, for defendants.

## MEMORANDUM AND ORDER

WOLF, District Judge.

At a hearing in the above-captioned cases on December 22, 1998, the court announced its preliminary conclusion regarding the definition of the term "Relevant Market Area" ("RMA") as used in M.G.L. c. 93B, § 4(3)(*l*). Dec. 22, 1998 Tr. ("Tr.") at 11–12. The court, however, permitted the defendants, Bernardi's, Inc. d/b/a/ Bernardi Honda ("Bernardi") and Richard Lundgren, Inc., d/b/a Lundgren Honda ("Lundgren") (collectively the "dealers"), to file a motion to reconsider the court's definition of RMA. Dec. 23, 1998 Order, ¶ 3. Accordingly, the dealers filed a motion to reconsider and an accompanying supplemental expert report. For the reasons stated below, the dealers' motion to reconsider is being denied.

As to the statutory definition of RMA, paragraph five of M.G.L. c. 93B, § 4(3)(*l*) (" § 4(3)(*l*)"), provides that:

> As used in this subsection, the relevant market area of a motor vehicle dealer with respect to any given line make is the more narrowly defined and circumscribed geographical area immediately surrounding its existing dealer location within which it obtained, during the period of time the dealership business has been operated from said location or the three-year period immediately preceding the date of said notice of intent to grant or enter into an additional franchise or selling agreement, whichever is the lesser, at least two-thirds of (i) its retail sales of new motor vehicles of said line make or (ii) its retail service sales . . . .

As interpreted by the court at the December 22, 1998 hearing, this language defines a dealer's RMA as a circle, with the dealer at the center, circumscribing the geographical area comprising either two-thirds of the dealer's new vehicle sales or two-thirds of its service sales, whichever is smaller. Tr. I at 11. The dealers, however, argue that a RMA need not be a circle, but may consist of an irregular shape as long as that shape accurately reflects two-thirds of new vehicles or service sales. Mem. in Supp. of Mtn. to Reconsider ("Reconsider Mem.") at 2–3, 7. In support of their argument, the dealer's rely heavily on *Ricky Smith Pontiac, Inc. v. Subaru of New England, Inc.*, 14 Mass. App.Ct. 396, 440 N.E.2d 29 (1982), and *Subaru of New England, Inc. v. Subaru of Wakefield, Inc.*, No. Civ. A. 96–01475, 1997 WL 572934 (Mass.Super.Sept.15, 1997). *See* Reconsider Mem. at 2–6.

*Ricky Smith,* is not directly analogous to this case because an earlier version of c. 93B (the "previous statute") enacted in 1970, with a substantively different definition of RMA, applied to that case. 14 Mass.App.Ct. at 405–406, 440 N.E.2d 29 ("[w]e are also satisfied . . . that [the judge] sought to decide the case upon the governing "equitable principles" standard enunciated in the 1970 statute despite his reference to the existence of an independent violation of the 1977 statute"). The previous statute permitted the court to consider equitable factors in defining a dealer's RMA. *See id.* In 1977, however, c. 93B was amended (the "amended statute"), and the definition of RMA was changed to the existing "bright line test," which excludes the consideration of equitable factors. *See Tober Foreign Motors, Inc. v. Reiter Oldsmobile, Inc.*, 376 Mass. 313, 331–332, 381 N.E.2d 908 (1978); *Ricky Smith,* 14 Mass.App.Ct. at 414–415, 440 N.E.2d 29.

The dealers' argument also relies in part on *dicta* from *Ricky Smith* that is taken out of context. *See* Reconsider Mem. at 4–5. In *Ricky Smith,* 14 Mass.App.Ct. at 421 n. 28, 440 N.E.2d 29, after referring to a trial exhibit depicting an oversimplified version of the plaintiff-dealers' RMA's, the court noted in *dicta* that "[i]n fact, of course, each dealer's area would probably be irregular in shape." This was not, as the dealers in this case argue, a general statement regarding the manner in which RMA's should be drawn under the amended statute. Rather, when read in context, this language pertained specifically to the plaintiff-dealers' RMA's, in that case, which were calculated by the superior court judge after considering equitable factors under the previous statute. *See id.* The above-quoted *dicta* in *Ricky Smith,* therefore, does not apply to this case, in which, the dealers' RMA's must be defined without consideration of equitable factors and in accordance with the amended statute.

Similarly, the dealers' reliance on the *Subaru* case is misplaced. *See* Reconsider Mem. at 5. In *Subaru,* 1997 WL 572934 at *10 n. 4, in *dicta* in a footnote, the superior court cited to the *dicta* in *Ricky Smith,* 14 Mass.App.Ct. at 421 n. 28, 440 N.E.2d 29, as the sole support for its statement that a RMA under the amended statute need not be a circle with the dealer at the center. For the reasons previously stated, this court respectfully finds that *Subaru* represents a misunderstanding of *Ricky Smith.*

Apart from the above case law, the dealers's argue that the plain meaning of § 4(3)(*l*), par. 5, does not require that the RMA be defined as a circle. *See* Reconsider Mem. at 6–8. The dealers cite to dictionary definitions of "circumscribe" and "surrounding" to support their contention that, in addition to a circle, a RMA may be depicted as an oval drawn around a polygon. *Id.* at 7. The dealers do not, however, deal with the term "immediately" as it is used in the statute to modify the word "surrounding." When the words "circumscribed" and "immediately surrounding" are read in context, a circle is the only geometric shape that satisfies the terms of the amended statute.

Moreover, defining RMA as a circle is in harmony with the Massachusetts opinions that have held that the amended definition of RMA was intended to create a bright line test. *See Tober Foreign Motors, Inc. v. Reiter Oldsmobile, Inc.,* 376 Mass. 313, 331–332, 381 N.E.2d 908 (1978) ("The 1977 revision sets out a quite sharp definition which may somewhat sacrifice theoretical correctness to ease of practical application"); *Ricky Smith,* 14 Mass.App.Ct. at 414–415, 440 N.E.2d 29 ("the formula definition [under the amended statute] creates a bright line test which substantively changes the equitable principles standard in the 1970 statute").

Conversely, the dealers argue that the purpose of c. 93B suggests that the RMA should not be defined as a circle. The court agrees that the Legislature intended c. 93B to protect motor vehicle franchisees from injury by their affiliated manufacturers, which hold greater bargaining power than the franchisees. *See Beard Motors, Inc. v. Toyota Motor Distribs., Inc.,* 395 Mass. 428, 433, 480 N.E.2d 303 (1985). The 1977 amendment to c. 93B, however, was intended to make the statute easier to apply, even if "theoretical correctness" was sacrificed for "ease of practical application." *See Tober,* 376 Mass. at 331–32, 381 N.E.2d 908. Defining RMA as a circle is certainly easier to apply than choosing among any number of possible "polygons" that may represent two-thirds of a dealers new car or service sales, and, therefore, is consistent with the intent of the 1977 amendment.

Rather than defining RMA as a circle, the dealers argue that "the proper method to determine the RMA is to list, in descending order of frequency, the towns or zip codes in which the dealer sells or services the most new cars until two-thirds of

those sales or service transactions are reached." Reconsider Mem. at 2. Moreover, in their supplemental expert report, the dealers suggest for the first time that the number of customers may be an appropriate method for determining sales for the purpose of calculating a dealer's RMA. *See* Dealers' Supplemental Expert Report ("Dlrs.' Supp. Exp. Rep."), ¶ 3. The language of § 4(3)($l$), however, precludes the dealers' argument.

Nowhere in § 4(3)($l$) is there any mention of an analysis of zip codes. In addition, the dealers' methodology for calculating a RMA results in highly irregular shapes, which cannot be reconciled with § 4(3)($l$)'s language requiring a RMA to immediately surround and circumscribe a dealer. *See* Dlrs.' Supp. Exp. Rep., Figure 1 (depicting RMA for Lundgren using customers as basis for sales), Pls.' Supplemental Expert Report, Tab 4 (depicting RMA for Lundgren using service sales as basis for sales). Furthermore, consideration of the number of customers as a basis for computing sales is inconsistent with the language of the statute. Section 4(3)($l$) expressly requires that a RMA be based upon a dealer's "sales of new motor vehicles" or its "service sales," and makes no reference to the number of customers of a dealer. M.G.L. c. 93B, § 4(3)($l$), par. 5.

The court concludes, therefore, that, as defined by par. 5 of § 4(3)($l$), a dealer's RMA is a circle, with the dealer at the center, circumscribing the geographical area comprising either two-thirds of the dealer's new vehicle sales or two-thirds of its service sales, whichever is smaller.[1] The dealers have conceded that, under this definition of RMA, Bernardi's does not have standing under § 4(3)($l$). Supplement to Def. Dealers' Expert Report at 2.

For the foregoing reasons, it is hereby ORDERED that:

1) The dealers' Motion to Reconsider (Docket No. 42 in C.A. No. 98–CV–10690–MLW) is DENIED.

2) The parties shall, by June 4, 1999, confer and file, jointly to the extent possible, a report updating their respective positions concerning:

a) whether Lundgren has standing if its RMA is defined in accordance with this Order;

b) whether a standing hearing regarding Lundgren is required, and, in any event, the number of witnesses, whether direct testimony can and should be received by affidavit, and the time required for such hearing;

c) the implications of the January 26, 1999 letter from Judge Motz of the United States District Court of the District of Maryland for the above-captioned cases and C.A. No. 98–11254–MLW; and

d) a proposed schedule for concluding these cases.

3) If necessary, a standing hearing will be held on June 15, 1999, at 2:30 p.m. Otherwise, a scheduling conference will be held at that time.

---

1. Although not at issue here, the dealers argue that a RMA should not be defined as a circle because, for a dealer located on the east coast of Massachusetts, the RMA would encompass the Atlantic Ocean. *See* Reconsider Mem. at 4. This argument, however, is unconvincing. For a coastal dealer, the RMA will still be a circle with the dealer at the center. The radius of the circle, however, will extend as far as necessary over land until the portion of the circle over land circumscribes two-thirds of the relevant sales for that dealer.