AMERICAN HONDA MOTOR CO., INC., Plaintiff, Appellee,

v.

BERNARDI'S, INC. d/b/a Bernardi Honda, Defendant, Appellant.

American Honda Motor Co., Inc., Plaintiff, Appellee,

v.

Richard Lundgren, Incorporated d/b/a Lundgren Honda,Defendant, Appellant.

Nos. 99–1921, 99–1922.

United States Court of Appeals, First Circuit.

Heard Nov. 5, 1999.

Decided Dec. 14, 1999.

Richard B. McNamara, with whom Gregory A. Holmes, Stephanie A. Bray, Elizabeth M. Leonard, and Wiggin & Nourie, P.A. were on brief for appellants.

Richard J. Inglis, with whom Richard A. Gargiulo, Marielise Kelly, and Gargiulo, Rudnick & Gargiulo were on brief for appellee.

Before LIPEZ, Circuit Judge, BOWNES, Senior Circuit Judge, and SARIS*, District Judge.

BOWNES, Senior Circuit Judge.

This appeal arises from two interpretations of the Massachusetts Automobile Dealers' Act by the district court. Mass. Gen. Laws Ann. ch. 93B, § 4 (West 1997) (the Act).

The district court ruled that under § 4(3)(*l*) of the Act the relevant market area of an automobile dealer is "a circle, with the dealer at the center, circumscribing the geographical area comprising either two-thirds of the dealer's new vehicle sales or two-thirds of its service sales, whichever is smaller." The district court also ruled that § 4(3)(*l*) is the sole provision within the Act under which an aggrieved dealer may seek relief from an alleged arbitrary prospective dealership placement. The appellants, Bernardi Honda and Lundgren Honda, are dealers within the definition of the Act.

We have decided to certify both issues to the Supreme Judicial Court of Massachusetts.

## I.

On March 3, 1998, the appellee, American Honda Motor Co., Inc., notified both dealers that it intended to award a new Honda dealership in Westborough, Massachusetts, to three named individuals. The dealers were also notified that Honda intended to enter into a dealer agreement with the named individuals on or after May 15, 1999. The dealers timely notified Honda as required by § 4(3)(*l*) of the Act, that they were going to protest the establishment of the new dealership.

Honda then filed separate but identical declaratory judgment actions under 28 U.S.C. § 2201(a) seeking a declaratory judgment that neither dealer had standing to protest the proposed new dealership in Westborough or alternatively that the pro-

---

waiver, as her overstaying has rendered her inadmissible for a period of ten years. *See* INA § 212(a)(9)(A)-(B), 8 U.S.C. § 1182(a)(9)(A)-(B).

* Of the District of Massachusetts, sitting by designation.

posed new dealership was not arbitrary, improper, or otherwise in violation of § 4(3)(*l*) of the Act.[1]

The dealers asserted identical counterclaims against Honda. Count I alleged that the new proposed dealership would be an arbitrary, unfair, and/or deceptive act in violation of § 4(3)(*l*) of the Act.

Count II alleged that Honda was impermissibly retaliating against the dealers in violation of the general provisions of § 4 of the Act. The dealers claimed that Honda sought to punish them because of their participation in multi-district litigation against Honda for conducting its business through a pattern of racketeering in violation of the civil RICO Act, 18 U.S.C. § 1962 *et seq.*[2] The multi-district litigation was settled in the U.S. District Court for Maryland for a $330 million payment by Honda.

## II.

The statutory definition of an automobile dealer's relevant market area is found in paragraph five of § 4(3)(*1*) of the Act:

> As used in this subsection, the relevant market area of a motor vehicle dealer with respect to any given line make is the more narrowly defined and circumscribed geographical area immediately surrounding its existing dealer location within which it obtained, during the period of time the dealership business has been operated from said location or the three-year period immediately preceding the date of said notice of intent to grant or enter into an additional franchise or selling agreement, whichever is the lesser, at least two-thirds of (i) its retail sales of new motor vehicles of said line make or (ii) its retail service sales, ....

The district court ruled:

[T]his language defines a dealer's RMA as a circle, with the dealer at the center, circumscribing the geographical area comprising either two-thirds of the dealer's new vehicle sales or two-thirds of its service sales, whichever is smaller.

The court considered the dealers' argument that the relevant market area "may consist of an irregular shape as long as that shape accurately reflects two-thirds of new vehicles or service sales." It rejected this contention based upon Massachusetts case law.

In support of their argument, the dealer's [sic] rely heavily on *Ricky Smith Pontiac, Inc. v. Subaru of New England, Inc.*, 14 Mass.App.Ct. 396, 440 N.E.2d 29 (1982), and *Subaru of New England, Inc. v. Subaru of Wakefield, Inc.*, No. Civ. A. 96–01475, 1997 WL 572934 (Mass.Super.Sept.15, 1997).

*Ricky Smith*, is not directly analogous to this case because an earlier version of c. 93B (the "previous statute") enacted in 1970, with a substantively different definition of RMA, applied to that case. 14 Mass.App.Ct. at 405–406, 440 N.E.2d 29 ("[w]e are also satisfied ... that [the judge] sought to decide the case upon the governing 'equitable principles' standard enunciated in the 1970 statute despite his reference to the existence of an independent violation of the 1977 statute"). The previous statute permitted the court to consider equitable factors in defining a dealer's RMA. In 1977, however, c. 93B was amended, and the definition of RMA was changed to the existing "bright line test," which excludes the consideration of equitable factors. *See Tober Foreign Motors, Inc. v. Reiter Oldsmobile, Inc.*, 376 Mass. 313, 331–332, 381 N.E.2d 908 (1978); *Ricky Smith*, 14 Mass.App.Ct. at 414–415, 440 N.E.2d 29.

---

**1.** The action against Lundgren Honda was brought in the Worcester Division of the United States District Court for the District of Massachusetts. The action against Bernardi Honda was brought in the Boston Division of the District Court. Both were consolidated for trial in the Boston Division.

**2.** Racketeering Influenced and Corrupt Organizations Act.

The dealers' argument also relies in part on *dicta* from *Ricky Smith* that is taken out of context. In *Ricky Smith*, 14 Mass.App.Ct. at 421 n. 28, 440 N.E.2d 29, after referring to a trial exhibit depicting an oversimplified version of the plaintiff-dealers' RMA's, the court noted in *dicta* that "[i]n fact, of course, each dealer's area would probably be irregular in shape." This was not, as the dealers in this case argue, a general statement regarding the manner in which RMA's should be drawn under the amended statute. Rather, when read in context, this language pertained specifically to the plaintiff-dealers' RMA's, in that case, which were calculated by the superior court judge after considering equitable factors under the previous statute. The above-quoted *dicta* in *Ricky Smith*, therefore, does not apply to this case, in which, the dealers' RMA's must be defined without consideration of equitable factors and in accordance with the amended statute.

Similarly, the dealers' reliance on the *Subaru* case is misplaced. In *Subaru*, 1997 WL 572934 at *10 n. 4, in *dicta* in a footnote, the superior court cited to the *dicta* in *Ricky Smith*, 14 Mass.App.Ct. at 421 n. 28, 440 N.E.2d 29, as the sole support for its statement that a RMA under the amended statute need not be a circle with the dealer at the center. For the reasons previously stated, this court respectfully finds that *Subaru* represents a misunderstanding of *Ricky Smith*.

The district court rebuffed the dealers' contention that, in addition to a circle, the relevant market area may be depicted as an oval around a polygon. It stated:

The dealers do not, however, deal with the term "immediately" as it is used in the statute to modify the word "surrounding." When the words "circumscribed" and "immediately surrounding" are read in context, a circle is the only geometric shape that satisfies the terms of the amended statute.

Moreover, defining RMA as a circle is in harmony with the Massachusetts opinions that have held that the amended definition of RMA was intended to create a bright line test. *See Tober Foreign Motors, Inc. v. Reiter Oldsmobile, Inc.*, 376 Mass. 313, 331–332, 381 N.E.2d 908 (1978) ("The 1977 revision sets out a quite sharp definition which may somewhat sacrifice theoretical correctness to ease of practical application"); *Ricky Smith*, 14 Mass.App.Ct. at 414–415, 440 N.E.2d 29 ("the formula definition [under the amended statute] creates a bright line test which substantively changes the equitable principles standard in the 1970 statute").

Citing to *Beard Motors, Inc. v. Toyota Motor Distrib., Inc.*, 395 Mass. 428, 433, 480 N.E.2d 303 (1985), the court acknowledged that the purpose of the Act was "to protect motor vehicle franchises from injury by their affiliated manufacturers which hold greater power than the franchisees." It then stated:

The 1977 amendment to c. 93B, however, was intended to make the statute easier to apply, even if "theoretical correctness" was sacrificed for "ease of practical application." *See Tober*, 376 Mass. At 331–32. Defining RMA as a circle is certainly easier to apply than choosing among any number of possible "polygons" that may represent two-thirds of a dealers new car or service sales, and, therefore, is consistent with the intent of the 1977 amendment.

The court then considered alternative arguments made by the dealers.

Rather than defining RMA as a circle, the dealers argue that "the proper method to determine the RMA is to list, in descending order of frequency, the towns or zip codes in which the dealer sells or services the most new cars until two-thirds of those sales or service transactions are reached." Moreover, in their supplemental expert report, the dealers suggest for the first time that the number of customers may be an

appropriate method for determining sales for the purpose of calculating a dealer's RMA. The language of § 4(3)(*l*), however, precludes the dealers' argument.

Nowhere in § 4(3)(*l*) is there any mention of an analysis of zip codes. In addition, the dealers' methodology for calculating a RMA results in highly irregular shapes, which cannot be reconciled with § 4(3)(*l*)'s language requiring a RMA to immediately surround and circumscribe a dealer. Furthermore, consideration of the number of customers as a basis for computing sales is inconsistent with the language of the statute. Section 4(3)(*l*), expressly requires that a RMA be based upon a dealer's "sales of new motor vehicles" or its "service sales," and makes no reference to the number of customers of a dealer. M.G.L. c. 93B, § 4(3)(*l*), par. 5.

. . . .

Although not at issue here, the dealers argue that a RMA should not be defined as a circle because, for a dealer located on the east coast of Massachusetts, the RMA would encompass the Atlantic Ocean. This argument, however, is unconvincing. For a coastal dealer, the RMA will still be a circle with the dealer at the center. The radius of the circle, however, will extend as far as necessary over land until the portion of the circle over land circumscribes two-thirds of the relevant sales for that dealer.

After the district court's decision defining the relevant market area of a dealer under the Act, the parties entered into a consent judgment providing that under the court's definition the dealers lacked standing to contest the declaratory judgment action brought by Honda. This, of course, was subject to the dealer's right to appeal.

### III.

In a subsequent opinion, the district court ruled:

[T]he court concludes that § 4(3)(*l*) is the sole provision within c. 93B under which an aggrieved dealer may seek relief from an alleged arbitrary prospective dealership placement.

In making this ruling the district court relied on two Massachusetts cases: *Reiter Oldsmobile, Inc. v. General Motors Corp.*, 378 Mass. 707, 393 N.E.2d 376 (1979); *Richard Lundgren, Inc. v. American Honda Motor Co.*, 45 Mass.App.Ct. 410, 699 N.E.2d 11 (1998). Neither of these cases explicitly hold as the district court did. *Compare Subaru of New England, Inc. v. Subaru of Wakefield, Inc.*, at 9, No. 96–01475 (Mass.Super.Ct. Sep. 24, 1999) (establishing an irregularly shaped relevant market area) *with Heritage Jeep–Eagle, Inc. v. Chrysler Corp.*, at 7, NO. 93–3037–E (Mass.Super.Ct. Aug. 26, 1999) (defining relevant market area as a circle around the dealership).

### IV.

We are impelled to certify the two issues in this case for the following reasons. We have canvassed all of the relevant Massachusetts case law pertinent to the interpretation of Mass. Gen. Laws Ann. ch. 94B, § 4 and have not found any that decide the two issues before us. There are no decisions of the Supreme Judicial Court of Massachusetts that are clear controlling precedent. Accordingly, in the interest of comity we certify the following two questions to the Supreme Judicial Court of Massachusetts:

1. How should the relevant market area of a motor vehicle dealer be defined under Mass. Gen. Laws Ann. ch. 93B, § 4(3)(*l*)?

2. Is Mass. Gen. Laws Ann. ch. 93B, § 4(3)(*l*) the sole provision within chapter 93B under which a motor vehicle dealer may seek relief from a prospective additional dealership which will sell the same motor vehicles as sold by the established motor vehicle dealer?

We, of course, will welcome the advice or comment of the Supreme Judicial Court on any other question of Massachusetts law it deems material to this case.

The clerk will transmit this question and our opinion on this case, along with copies of the briefs, exhibits, and appendix to the Supreme Judicial Court of Massachusetts.

Jurisdiction is retained.