## Richard Lundgren, Incorporated[1] *vs.* American Honda Motor Co., Inc.

No. 97-P-589.

Worcester. March 3, 1998. - September 2, 1998.

Present: Kass, Jacobs, & Porada, JJ.

*Motor Vehicle,* Franchise. *Consumer Protection Act,* Motor vehicle franchise, Attorney's fees.

Discussion of the provisions of G. L. c. 93B, § 4(3)(*l*), which prohibit a motor vehicle distributor from granting, "arbitrarily" and without notice, a new dealership franchise within an existing franchisee's market area, and which provide a dispute resolution procedure similar to. an action seeking declaratory relief before any such new dealership is established. [411-413]

This court concluded that G. L. c. 93B, § 12A, which provides a motor vehicle dealer with a right to recover legal expenses incurred in a successful action for violation of the provisions of that statute, does not confer a right to recover legal expenses incurred in an action seeking essentially declaratory relief pursuant to the provisions of G. L. c. 93B, § 4(3)(*l*). [414-416]

Where a Superior Court judge had determined that a motor vehicle distributor's proposal to award a new dealership franchise within the market area of an existing franchisee was "arbitrary" within the meaning of G. L. c. 93B, § 4(3)(*l*), but the proposal was merely inchoate, there was no violation of G. L. c. 93B that warranted an award of legal fees and costs against the distributor. [416-417]

Civil action commenced in the Superior Court Department on April 10, 1992.

The case was heard by *Thayer Fremont-Smith,* J.

*Marielise Kelly* for the defendant.

*Allan R. Curhan* for the plaintiff.

Kass, J. After trial of an action brought under G. L. c. 93B,[2] a

---

[1]Doing business as Lundgren Honda.

[2]Added to the General Laws by St. 1970, c. 814, § 1, which bore the caption: "An Act regulating business practices between motor vehicle manufacturers, distributors and dealers."

judge of the Superior Court determined that a proposal by American Honda Motor Co. (American Honda) to award a new dealership franchise in Westborough would impinge on the territory of the plaintiff's existing Honda dealership and was, therefore, "arbitrary" in the statutory sense. See G. L. c. 93B, § 4(3)(*l*). The judge further concluded that American Honda had violated chapter 93B and assessed against American Honda the plaintiff's attorneys' fees and costs in the amount of $431,738.16. See G. L. c. 93B, § 12A.

American Honda does not contest so much of the judge's decision as determined that the proposed dealership invaded the plaintiff's market area but appeals from the imposition of legal expenses. We decide that American Honda's inchoate proposal did not constitute a violation of c. 93B and that, therefore, the plaintiff was not entitled to recover legal fees and costs under G. L. c. 93B, § 12A.

1. *Purpose and design of G. L. c. 93B, § 4(3)(l).* General Laws c. 93B was enacted to protect existing car dealerships in Massachusetts from "destructive intrabrand competition and the unequal economic power of manufacturers." *Heritage Jeep-Eagle, Inc.* v. *Chrysler Corp.*, 39 Mass. App. Ct. 254, 259 (1995) (citations omitted). See, for a discussion of the history of c. 93B, *Ricky Smith Pontiac, Inc.* v. *Subaru of New England, Inc.*, 14 Mass. App. Ct. 396, 402-404 (1982). Most of the provisions of §§ 3 through 11 of that chapter are dedicated to proscribing, as violations of the statute, activities determined to be unfair methods of competition or unfair and deceptive acts or practices.

The first two paragraphs of § 4(3)(*l*) are no exception. In relevant part, as amended by St. 1977, c. 717, § 3, they pronounce it a violation of chapter 93B for a motor vehicle distributor:[3]

> "arbitrarily and without notice to existing franchisees as hereinafter provided, to grant or enter into a franchise or selling agreement to or with an additional franchisee who intends or would be required by such franchise or selling agreement to conduct its dealership operations from a

---

[3]The statute applies also to a manufacturer, a wholesaler, a distributor branch or division, a factory branch or division, or a wholesale branch or division, or officer, agent, or other representative thereof.

place of business situated within the relevant market area[4] of an existing franchisee or franchisees representing the same line make. . . ."

The third and fourth paragraphs of § 4(3)(*l*) go on to create a system by which a distributor contemplating the establishment of a new franchise and the existing dealers in that market area can resolve their dispute over the proposed dealership before it is actually established. A motor vehicle distributor must notify all existing dealers within a twenty-mile radius of a proposed dealership at least sixty days prior to granting a franchise or entering into a franchise agreement for that dealership. Any dealer whose "relevant market area" includes the location of the new dealership may, at any time prior to the date set for the establishment of the new franchise, petition the Superior Court to determine whether the proposed dealership would be "arbitrary," after first notifying the distributor of its intent to do so within thirty days of receiving notice of the proposed franchise.

As commonly used, "arbitrary" signifies whimsical or idiosyncratic action. *W. Oliver Tripp Co.* v. *American Hoechst Corp.*, 34 Mass. App. Ct. 744, 748-749 (1993). See *Cotter* v. *Chelsea*, 329 Mass. 314, 318 (1952); *Federman* v. *Board of Appeals of Marblehead*, 35 Mass. App. Ct. 727, 730-731 (1994). In its c. 93B sense, however, "arbitrary" is a term of art that connotes that a new dealership will impinge economically on an existing dealership. Indeed, G. L. c. 93B, § 4(3)(*l*)(i) through (viii), sets out a nonexhaustive list of factors the court may consider in determining whether the proposed action is "arbitrary."

While the statute is silent as to the consequence of a determination that a *proposed* franchise is arbitrary, the procedure set out in the statute resembles a request for a declaratory judgment. See G. L. c. 231A, § 1. The resemblance is that G. L. c. 93B, § 4(3)(*l*), allows all parties interested in the creation of the proposed dealership to eliminate uncertainty about their respective rights and obligations, so that they may "deal intelligently with the situation before them, . . . agree between themselves as far as possible, and . . . reduce as much as possible the area of future litigation." *Oxford* v. *Oxford*

---

[4]See G. L. c. 93B, § 4(3)(*l*), fifth par., for a definition of relevant market area.

*Water Co.*, 391 Mass. 581, 585 (1984). See *Nelson* v. *Commissioner of Correction*, 390 Mass. 379 (1983).

2. *Procedure followed in this case.* Here, American Honda followed the notification procedure of the third paragraph of G. L. c. 93B, § 4(3)(*l*), and the plaintiff availed itself of the response mechanism provided for in the fourth paragraph of § 4(3)(*l*).[5] Specifically, American Honda, a motor vehicle distributor, gave written notice on February 12, 1992, to the plaintiff, a motor vehicle dealer, of its intention to enter into a franchise agreement on May 1, 1992, with Roger Groux to open a new Honda dealership in Westborough. On March 5, 1992, the plaintiff, then in the process of relocating — with American

---

[5]The full text of the third and fourth paragraphs of § 4(3)(*l*), as amended by St. 1977, c. 717, § 3, is as follows:

"Any manufacturer, distributor, wholesaler, distributor branch or division, factory branch or division or wholesale branch or division which intends to grant or enter into an additional franchise or selling agreement, shall, at least sixty days prior to granting such franchise or entering into such agreement, give written notice of its intention to do so to each motor vehicle dealer with a franchise or selling agreement covering the same line make within a twenty mile radius of the location where the business of the proposed franchise will be located. Such notice shall state the date on or after which such proposed franchise shall be granted or entered into.

"Prior to the date set forth in said notice on or after which such franchise or selling agreement will be granted or entered into, any motor vehicle dealer with a franchise or selling agreement covering the same line make as that offered to the proposed franchisee may, if such proposed franchisee intends to conduct or otherwise operate its business from any place or places within the relevant market area of such motor vehicle dealer or if the proposed franchise or selling agreement requires or specifies that the proposed franchisee conduct or otherwise operate its business from any place or places within the relevant market area of such motor vehicle dealer, petition the superior court to determine whether such appointment or proposed appointment is arbitrary; provided always, however, that such motor vehicle dealer first give written notice of its intention to do so to such manufacturer, distributor, wholesaler, distributor branch or division, factory branch or division or wholesale branch or division within thirty days from the date on which it received notice of such intention to grant or enter into the additional franchise or selling agreement. Such petition shall be entitled to a speedy trial. The court shall have authority to modify or stay the effective date of such proposed franchise or selling agreement or restrain its implementation pending a final determination of the issues raised by such petition upon such terms as it may determine. Any such modification or stay of the effective date of such proposed franchise or selling agreement or restraint on its implementation shall not be effective for more than thirty days unless extended by the court for good cause or unless the trial of such petition is then in progress."

Honda's permission — its Honda dealership from Worcester to Auburn, notified American Honda of its objection to the proposed Westborough franchise and its intent to bring suit. The plaintiff filed its action on April 10, 1992, seeking to have the proposed franchise declared "arbitrary" under G. L. c. 93B, § 4(3)(*l*).

After a bench trial, the judge found that the proposed franchise was within the plaintiff's relevant market area[6] and was "arbitrary" because it "was not based on any careful consideration of relevant market data." See *Heritage Jeep-Eagle, Inc.* v. *Chrysler Corp.*, 39 Mass. App. Ct. at 256-257. The judge thought that American Honda's decision to open a dealership in Westborough was colored by American Honda's displeasure with the plaintiff and a personal friendship between Groux (the prospective franchisee) and James Moynihan, a national market representative of American Honda.

3. *When legal fees are recoverable.* Having decided that location of a Westborough dealership would be arbitrary within the meaning of G. L. c. 93B, the judge moved in separate hearings to the questions of whether Honda had committed a "violation" of § 4(3)(*l*) of that statute, and whether the plaintiff was entitled to recover legal fees and costs under G. L. c. 93, § 12A.

Section 12A, so far as immediately material, provides that

> "Any . . . motor vehicle dealer who suffers any loss of money or property . . . as a result of the use or employment by a . . . distributor . . . of an unfair method of competition or an unfair or deceptive act or practice declared unlawful under [§§ 3 through 11], inclusive . . . may bring an action in the [S]uperior [C]ourt for damages and equitable relief, including injunctive relief. A motor vehicle dealer, if it has not suffered any loss of money or property, may obtain final equitable relief if it can be shown that the . . . unfair act or practice may have the effect of causing such loss of money or property.
>
> "If the court finds for the . . . motor vehicle dealer in

---

[6]Although the trial judge stated that he measured the relevant market area in relation to the plaintiff's Worcester location, he ultimately considered the plaintiff's Auburn location, to which the plaintiff had moved by the time the case came to trial, as the focal point from which to determine the relevant market area.

any action commenced hereunder, that there has *been a violation* of [§§ 3 to 11], inclusive . . . such . . . motor vehicle dealer shall, in addition to any other relief provided for *by this section* . . . be awarded reasonable attorneys' fees and costs . . ." (emphasis supplied).

Section 12A, thus, provides a dealer a right of action for damages in Superior Court for violation of G. L. c. 93B, §§ 3 through 11, and, ancillary to that right of action, if the dealer is successful, the right to recover legal fees.

The right to recover legal fees was added to § 12A by St. 1985, c. 689, § 2, and refers specifically to "any action commenced hereunder," that is to say under § 12A. Section 1 of the 1985 act added a similar provision for recovery of legal expenses to G. L. c. 93B, § 5C, having to do with indemnification of a manufacturer for the negligence of a dealer or franchisee. It follows that St. 1985, c. 689, confers a right to recover legal expenses only in certain kinds of cases arising under c. 93B, not an across-the-board right to recover legal expenses. We also assume a purpose to the Legislature having established in G. L. c. 93B, § 4(3)(*l*), par. 3 & 4, the procedure for an anticipatory ruling on whether a grant or establishment of a new franchise (or, in the lingo of the industry, a new "point") impinges on an existing dealer and having established in § 12A a right of action for redress of injuries arising out of a violation of the statute. We construe the statute to avoid any part of the legislation being meaningless or duplicative. *International Org. of Masters, Mates, & Pilots* v. *Woods Hole, Martha's Vineyard & Nantucket S.S. Authy.*, 392 Mass. 811, 813 (1984). *Guardianship of Smith*, 43 Mass. App. Ct. 493, 498 (1997). We do not think that the provision, added in 1985 to § 12A, conferring the right to recover legal expenses may be imported to § 4(3)(*l*).

Apart from the absence of statutory language suggesting such an importation, there is a convincing reason why the Legislature would have provided a right to recover legal fees in § 12A actions and not in actions begun under § 4(3)(*l*). The function of the latter, as we have observed, is to give manufacturers and dealers an opportunity to test, before capital is expended or damage done, the question whether a proposed new dealership unfairly poaches on an existing dealer's territory. There would be scant incentive for a manufacturer or distributor to comply

with the third paragraph of § 4(3)(*l*) by notifying dealers about the opening of a new point and soliciting their views if the consequence for conscientious attendance to the statute were the imposition of the legal expenses of those dealers who petition for adjudication of the market territory issue and obtain a favorable result, i.e., that a determination that the proposed new point violates the statute.

The instant case illustrates the inchoate nature of the arrangements that generally exist at the time of § 4(3)(*l*) adjudication. American Honda had not made an agreement with the prospective franchisee. It had only entered into a letter of intent with that franchisee, and the letter of intent provided expressly that the next step of an agreement to establish a new dealership was conditioned on the lawfulness of establishing the new dealership. See *Boston Car Co.* v. *Acura Auto. Div., American Honda Motor Co.*, 971 F.2d 811, 817 (1st Cir. 1992). That lawfulness, under § 4(3)(*l*), could be determined by consent of the existing dealers notified or by the adjudicatory process built into § 4(3)(*l*). American Honda stipulated that it would take no steps toward establishing a dealership at the Westborough point, and, obviously, the plaintiff suffered no damage from a competing car agency that never opened. The plaintiff argues that all questions that arise under G. L. c. 93B should be resolved with a view to arming David against Goliath, but we do not think that in § 4(3)(*l*) the Legislature intended to escalate the weaponry from a slingshot to an assault rifle.

If a manufacturer or distributor has violated a provision of §§ 3 through 11, it stands on a very different footing. Section 3, notably, characterizes a series of practices as unfair, including market area invasion. Among those practices are unequal supply of cars and trucks for sale, loading on of unwanted accessories, and unequal price discounts that enable a favored dealer to sell cars for less than a dealer who does not receive the same discounts. When a violation occurs, the dealer will have suffered loss of money or property, and the punitive provision in § 12A that allows recovery of legal expenses becomes applicable. An example is *Heritage Jeep-Eagle, Inc.* v. *Chrysler Corp.*, 39 Mass. App. Ct. at 255, in which the grievance of the dealer was that the manufacturer had approved the sale of a dealership and approved its move to a new location that invaded the plaintiff's market area.

4. *Whether a violation occurred.* American Honda did not fail

to notify the plaintiff of the prospective establishment of the new dealership in Westborough, and it did not grant that dealership or even enter into an agreement, beyond the conditional letter of intent, to establish it. As to the inchoate nature of a letter of intent in this context, see *Boston Car Co.* v. *Acura Auto. Div., American Honda Motor Co.*, 971 F.2d at 817. See also *Schwanbeck* v. *Federal-Mogul Corp.*, 412 Mass. 703, 705-707 (1992). There was, therefore, no violation of § 4(3)(*l*). Nor did American Honda violate the more general provisions of G. L. c. 93B, § 4(1). That subsection, inserted by St. 1970, c. 814, § 1, provides that it is a violation of c. 93B for:

> "any manufacturer . . . distributor . . . or motor vehicle dealer to engage in any action which is arbitrary, in bad faith, or unconscionable and which causes damage to any of said parties or to the public."

American Honda never got beyond proposing an action that the trial judge determined *would* be arbitrary in the sense of the statute. It is anomalous to turn compliance with the testing mechanism of the third and fourth paragraphs of § 4(3)(*l*) into a violation of the statute.[7]

5. *Conclusion.* As America Honda committed no violation of G. L. c. 93B, the award of legal fees and costs was not warranted. On the basis we have decided the case, we need not consider whether a dealership, assuming a violation has been proved, must, as a prerequisite to the recovery of legal expenses, also prove that it suffered damages as a result of the violation. See *Jet Line Servs., Inc.* v. *American Employers Ins. Co.*, 404 Mass. 706, 718 (1989). Compare G. L. c. 93B, § 12A, with G. L. c. 93A, § 9(4).

The order awarding counsel fees and costs is vacated, and a new order shall be entered denying counsel fees and costs.

*So ordered.*

---

[7]The plantiff's complaint contained multiple counts, among them a claim that American Honda had "bootlegged" sales of Honda automobiles through an Acura dealership in the plaintiff's original, Worcester-centered market area. That issue was not determined or, so far as appears, ever litigated and is not a factor in this appeal.