USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 99-1921

 AMERICAN HONDA MOTOR CO., INC.,

 Plaintiff, Appellee,

 v.

 BERNARDI'S, INC. D/B/A BERNARDI HONDA,

 Defendant, Appellant.

No. 99-1922

 AMERICAN HONDA MOTOR CO., INC.,

 Plaintiff, Appellee,

 v.

 RICHARD LUNDGREN, INCORPORATED D/B/A LUNDGREN HONDA,

 Defendant, Appellant.

 APPEALS FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Mark L. Wolf, U.S. District Judge]
 

 Before

 Lipez, Circuit Judge,
 
 Bownes, Senior Circuit Judge,
 
 and Saris*, District Judge.
 
 
 
 

 Richard B. McNamara, with whom Gregory A. Holmes, Stephanie A.
Bray, Elizabeth M. Leonard, and Wiggin & Nourie, P.A. were on brief
for appellants.

 Richard J. Inglis, with whom Richard A. Gargiulo, Marielise
Kelly, and Gargiulo, Rudnick & Gargiulo were on brief for appellee.

December 14, 1999

_________________

 *Of the District of Massachusetts, sitting by designation.

 BOWNES, Senior Circuit Judge. This appeal arises from
two interpretations of the Massachusetts Automobile Dealers' Act by
the district court. Mass. Gen. Laws Ann. ch. 93B, 4 (West 1997)
(the Act). 
 The district court ruled that under 4(3)(l) of the Act
the relevant market area of an automobile dealer is "a circle, with
the dealer at the center, circumscribing the geographical area
comprising either two-thirds of the dealer's new vehicle sales or
two-thirds of its service sales, whichever is smaller." The
district court also ruled that 4(3)(l) is the sole provision
within the Act under which an aggrieved dealer may seek relief from
an alleged arbitrary prospective dealership placement. The
appellants, Bernardi Honda and Lundgren Honda, are dealers within
the definition of the Act.
 We have decided to certify both issues to the Supreme
Judicial Court of Massachusetts.
 I.
 On March 3, 1998, the appellee, American Honda Motor Co.,
Inc., notified both dealers that it intended to award a new Honda
dealership in Westborough, Massachusetts, to three named
individuals. The dealers were also notified that Honda intended to
enter into a dealer agreement with the named individuals on or
after May 15, 1999. The dealers timely notified Honda as required
by 4(3)(l) of the Act, that they were going to protest the
establishment of the new dealership.
 Honda then filed separate but identical declaratory
judgment actions under 28 U.S.C. 2201(a) seeking a declaratory
judgment that neither dealer had standing to protest the proposed
new dealership in Westborough or alternatively that the proposed
new dealership was not arbitrary, improper, or otherwise in
violation of 4(3)(l) of the Act. 
 The dealers asserted identical counterclaims against
Honda. Count I alleged that the new proposed dealership would be
an arbitrary, unfair, and/or deceptive act in violation of
 4(3)(1) of the Act.
 Count II alleged that Honda was impermissibly retaliating
against the dealers in violation of the general provisions of 4
of the Act. The dealers claimed that Honda sought to punish them
because of their participation in multi-district litigation against
Honda for conducting its business through a pattern of racketeering
in violation of the civil RICO Act, 18 U.S.C. 1962 et seq. The
multi-district litigation was settled in the U.S. District Court
for Maryland for a $330 million payment by Honda. 

 II.
 The statutory definition of an automobile dealer's
relevant market area is found in paragraph five of 4(3)(1) of the
Act:
 As used in this subsection, the relevant
 market area of a motor vehicle dealer with
 respect to any given line make is the more
 narrowly defined and circumscribed
 geographical area immediately surrounding its
 existing dealer location within which it
 obtained, during the period of time the
 dealership business has been operated from
 said location or the three-year period
 immediately preceding the date of said notice
 of intent to grant or enter into an additional
 franchise or selling agreement, whichever is
 the lesser, at least two-thirds of (i) its
 retail sales of new motor vehicles of said
 line make or (ii) its retail service sales,
 . . . .

 The district court ruled:
 [T]his language defines a dealer's RMA as a
 circle, with the dealer at the center,
 circumscribing the geographical area
 comprising either two-thirds of the dealer's
 new vehicle sales or two-thirds of its service
 sales, whichever is smaller.

 The court considered the dealers' argument that the
relevant market area "may consist of an irregular shape as long as
that shape accurately reflects two-thirds of new vehicles or
service sales." It rejected this contention based upon
Massachusetts case law.
 In support of their argument, the dealer's 
 [sic] rely heavily on Ricky Smith Pontiac,
 Inc. v. Subaru of New England, Inc., 14 Mass.
 App. Ct. 396 (1982), and Subaru of New
 England, Inc. v. Subaru of Wakefield, Inc.,
 No. Civ. A. 96-01475, 1997 WL 572934 (Mass.
 Super. Sept. 15, 1997).

 Ricky Smith, is not directly analogous to
 this case because an earlier version of c. 93B
 (the "previous statute") enacted in 1970, with
 a substantively different definition of RMA,
 applied to that case. 14 Mass. App. Ct. at
 405-406 ("[w]e are also satisfied . . . that
 [the judge] sought to decide the case upon the
 governing "equitable principles" standard
 enunciated in the 1970 statute despite his
 reference to the existence of an independent
 violation of the 1977 statute"). The previous
 statute permitted the court to consider
 equitable factors in defining a dealer's RMA. 
 In 1977, however, c. 93B was amended, and the
 definition of RMA was changed to the existing
 "bright line test," which excludes the
 consideration of equitable factors. See Tober
 Foreign Motors, Inc. v. Reiter Oldsmobile,
 Inc., 376 Mass. 313, 331-332 (1978); Ricky
 Smith, 14 Mass. App. Ct. at 414-415.

 The dealers' argument also relies in part
 on dicta from Ricky Smith that is taken out of
 context. In Ricky Smith, 14 Mass. App. Ct. at
 421 n.28, after referring to a trial exhibit
 depicting an oversimplified version of the
 plaintiff-dealers' RMA's, the court noted in
 dicta that "[i]n fact, of course, each
 dealer's area would probably be irregular in
 shape." This was not, as the dealers in this
 case argue, a general statement regarding the
 manner in which RMA's should be drawn under
 the amended statute. Rather, when read in
 context, this language pertained specifically
 to the plaintiff-dealers' RMA's, in that case,
 which were calculated by the superior court
 judge after considering equitable factors
 under the previous statute. The above-quoted
 dicta in Ricky Smith, therefore, does not
 apply to this case, in which, the dealers'
 RMA's must be defined without consideration of
 equitable factors and in accordance with the
 amended statute.

 Similarly, the dealers' reliance on the
 Subaru case is misplaced. In Subaru, 1997 WL
 572934 at *10 n.4, in dicta in a footnote, the
 superior court cited to the dicta in Ricky
 Smith, 14 Mass. App. Ct. at 421 n. 28, as the
 sole support for its statement that a RMA
 under the amended statute need not be a circle
 with the dealer at the center. For the
 reasons previously stated, this court
 respectfully finds that Subaru represents a
 misunderstanding of Ricky Smith.

 The district court rebuffed the dealers' contention that,
in addition to a circle, the relevant market area may be depicted
as an oval around a polygon. It stated:
 The dealers do not, however, deal with the
 term "immediately" as it is used in the
 statute to modify the word "surrounding." 
 When the words "circumscribed" and
 "immediately surrounding" are read in context,
 a circle is the only geometric shape that
 satisfies the terms of the amended statute.

 Moreover, defining RMA as a circle is in
 harmony with the Massachusetts opinions that
 have held that the amended definition of RMA
 was intended to create a bright line test. 
 See Tober Foreign Motors, Inc. v. Reiter
 Oldsmobile, Inc., 376 Mass. 313, 331-332
 (1978) ("The 1977 revision sets out a quite
 sharp definition which may somewhat sacrifice
 theoretical correctness to ease of practical
 application"); Ricky Smith, 14 Mass. App. Ct.
 at 414-415 ("the formula definition [under the
 amended statute] creates a bright line test
 which substantively changes the equitable
 principles standard in the 1970 statute").

 Citing to Beard Motors, Inc. v. Toyota Motor Distrib.,
Inc., 395 Mass. 428, 433 (1985), the court acknowledged that the
purpose of the Act was "to protect motor vehicle franchises from
injury by their affiliated manufacturers which hold greater power
than the franchisees." It then stated:
 The 1977 amendment to c. 93B, however, was
 intended to make the statute easier to apply,
 even if "theoretical correctness" was
 sacrificed for "ease of practical
 application." See Tober, 376 Mass. At 331-32. 
 Defining RMA as a circle is certainly easier
 to apply than choosing among any number of
 possible "polygons" that may represent two-
 thirds of a dealers new car or service sales,
 and, therefore, is consistent with the intent
 of the 1977 amendment. 

 The court then considered alternative arguments made by
the dealers.
 Rather than defining RMA as a circle, the
 dealers argue that "the proper method to
 determine the RMA is to list, in descending
 order of frequency, the towns or zip codes in
 which the dealer sells or services the most
 new cars until two-thirds of those sales or
 service transactions are reached." Moreover,
 in their supplemental expert report, the
 dealers suggest for the first time that the
 number of customers may be an appropriate
 method for determining sales for the purpose
 of calculating a dealer's RMA. The language
 of 4(3)(l), however, precludes the dealers'
 argument.

 Nowhere in 4(3)(l) is there any mention
 of an analysis of zip codes. In addition, the
 dealers' methodology for calculating a RMA
 results in highly irregular shapes, which
 cannot be reconciled with 4(3)(l)'s language
 requiring a RMA to immediately surround and
 circumscribe a dealer. Furthermore,
 consideration of the number of customers as a
 basis for computing sales is inconsistent with
 the language of the statute. Section 4(3)(l), 
 expressly requires that a RMA be based upon a
 dealer's "sales of new motor vehicles" or its
 "service sales," and makes no reference to the
 number of customers of a dealer. M.G.L. c.
 93B, 4(3)(l), par. 5.

 . . . .

 Although not at issue here, the dealers
 argue that a RMA should not be defined as a
 circle because, for a dealer located on the
 east coast of Massachusetts, the RMA would
 encompass the Atlantic Ocean. This argument,
 however, is unconvincing. For a coastal
 dealer, the RMA will still be a circle with
 the dealer at the center. The radius of the
 circle, however, will extend as far as
 necessary over land until the portion of the
 circle over land circumscribes two-thirds of
 the relevant sales for that dealer.

 After the district court's decision defining the relevant
market area of a dealer under the Act, the parties entered into a
consent judgment providing that under the court's definition the
dealers lacked standing to contest the declaratory judgment action
brought by Honda. This, of course, was subject to the dealer's
right to appeal.
 III.
 In a subsequent opinion, the district court ruled:
 [T]he court concludes that 4(3)(l) is the
 sole provision within c. 93B under which an
 aggrieved dealer may seek relief from an
 alleged arbitrary prospective dealership
 placement.

In making this ruling the district court relied on two
Massachusetts cases: Reiter Oldsmobile, Inc. v. General Motors
Corp., 378 Mass. 707 (1979); Richard Lundgren, Inc. v. American
Honda Motor Co., 45 Mass. App. Ct. 410 (1998). Neither of these
cases explicitly hold as the district court did. Compare Subaru
of New England, Inc. v. Subaru of Wakefield, Inc., at 9, No. 96-
01475 (Mass. Super. Ct. Sep. 24, 1999) (establishing an irregularly
shaped relevant market area) with Heritage Jeep-Eagle, Inc. v.
Chrysler Corp., at 7, NO. 93-3037-E (Mass. Super. Ct. Aug. 26,
1999) (defining relevant market area as a circle around the
dealership).

 IV.
 We are impelled to certify the two issues in this case
for the following reasons. We have canvassed all of the relevant
Massachusetts case law pertinent to the interpretation of Mass.
Gen. Laws Ann. ch. 94B, 4 and have not found any that decide the
two issues before us. There are no decisions of the Supreme
Judicial Court of Massachusetts that are clear controlling
precedent. Accordingly, in the interest of comity we certify the
following two questions to the Supreme Judicial Court of
Massachusetts:
 1. How should the relevant market area of a motor
vehicle dealer be defined under Mass. Gen. Laws Ann. ch. 93B,
 4(3)(l)?
 2. Is Mass. Gen. Laws Ann. ch. 93B, 4(3)(l) the sole
provision within chapter 93B under which a motor vehicle dealer may
seek relief from a prospective additional dealership which will
sell the same motor vehicles as sold by the established motor
vehicle dealer?
 We, of course, will welcome the advice or comment of the
Supreme Judicial Court on any other question of Massachusetts law
it deems material to this case.
 The clerk will transmit this question and our opinion on
this case, along with copies of the briefs, exhibits, and appendix
to the Supreme Judicial Court of Massachusetts. 
 Jurisdiction is retained.