**GALLO MOTOR CENTER CORP., Plaintiff**

v.

**MAZDA MOTOR OF AMERICA, INC., Defendant.**

**No. CIV.A. 01–40157–NMG.**

United States District Court, D. Massachusetts.

March 7, 2002.

Elizabeth M. Leonard, Richard B. McNamara, Gregory A.0.00 Holmes, Wiggin & Nourie, PA, for Gallo Motor Center Corporation dba Gallo Mazda.

John R. Skelton, William F. Benson, Bingham Dana, Boston, MA, for Mazda Motor of America, Inc.

### MEMORANDUM & ORDER

GORTON, District Judge.

The plaintiff, Gallo Motor Center Corporation ("Gallo"), contests the establishment of a new dealership by Mazda Motor of America, Inc. ("Mazda") on Route 9 at Walnut Street in Shrewsbury, Massachusetts. The gravamen of the plaintiff's complaint is that Mazda's proposed dealer site in Shrewsbury violates the so-called "Dealer's Bill of Rights", M.G.L. c 93B § 4(3)(1).

This action is here under federal diversity jurisdiction, i.e. the plaintiff is a Massachusetts corporation and the defendant is a California corporation.

On November 5, 2001, this Court entered a Memorandum and Order granting, in part, and denying, in part, Mazda's motion for a speedy trial. Pursuant to that Memorandum and Order, this Court scheduled the trial date to commence on

March 25, 2002. Currently pending before this Court is Mazda's motion for summary judgment.

## I. Factual Background

### A. Gallo's Worcester Dealership

In 1994 Gallo acquired a Mazda dealership located at 235 Shrewsbury Street in Worcester. At that time, it is undisputed that the Worcester area was a highly competitive market for automobile sales and there were competing dealerships in close proximity to Gallo's franchise site. Most notably, the now-defunct Roy Rioux dealership was located in Westborough on Route 9, just 1.2 miles east of the Shrewsbury line.

Mazda defines its dealers' geographic area by assigning each dealer a Statistical Observation Area ("SOA") corresponding to specific zip codes. Pursuant to its franchise agreement, Gallo represents Mazda with respect to sales, service and marketing in its assigned SOA. As of 1999, Shrewsbury was in Gallo's SOA but Westborough was not.

### B. The Proposed Shrewsbury Mazda Franchise

In 1998, the Roy Rioux dealership ceased operations and shortly thereafter, Mazda investigated possible new locations for a combined Lincoln–Mercury Mazda dealership. By 1999, Mazda identified the intersection of Route 9 and Walnut Street as the site of a potential replacement dealership. At that time, Mazda notified Nicholas Gallo, an owner of Gallo Mazda, that he would soon receive a letter informing him that Mazda intended to establish a new dealership. Mazda did not inform Mr. Gallo that the site of the new dealership was in Shrewsbury nor did Mr. Gallo make any inquiries with respect to its precise location. During that same period, Gallo, at Mazda's request, was in the process of moving its dealership facility from its Shrewsbury Street location to its present site at 70 Gold Star Boulevard in Worcester.

On August 16, 1999, Mazda notified Gallo by certified mail of its intention to establish a new Mazda dealership "at the Southwest corner of Route 9 and Walnut Street in Westboro, Massachusetts." Mazda further advised Gallo that it anticipated that the new dealership would begin operation in January, 2000 or shortly thereafter. Although that notice provided Gallo with the correct street address of the proposed Route 9 dealership, it inaccurately identified the site as being in Westborough rather than Shrewsbury.

At the time he received Mazda's notice letter, Nicholas Gallo understood that, pursuant to the protest procedures of Chapter 93B, his dealership was required to notify Mazda of its intent to sue within 30 days of receipt of the letter. Based upon the notice letter, Gallo assumed that the new dealership would effectively replace the Rioux franchise in Westborough. The day after receiving the notice letter, Nicholas Gallo allegedly conferred with his business associate, Alfred Gallo, and they agreed that they would not protest the establishment of the new dealership because Westborough was sufficiently distant to give Gallo "enough space to compete equally."

Gallo contends that it did not become aware of the Shrewsbury location of the new Mazda dealership until March, 2001 when one of its employees noticed a sign for the new dealership at the construction site even though Mazda had long since begun construction at that site. On March 28, 2001 Nicholas Gallo informed the Regional General Manager for Mazda that he was both surprised and displeased that the new dealership was in Shrewsbury rather than in Westborough.

Almost three months later on June 21, 2001, Gallo sent a letter to Mazda challenging Mazda's establishment of the Shrewsbury dealership and its failure to provide Gallo with adequate notice. Gallo subsequently filed suit in this Court.

## IV. *Discussion*

### A. Summary Judgment Standard

Summary judgment is warranted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Once the moving party shows that there is no issue of material fact, the plaintiff must establish the existence of a genuine factual controversy. *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir.1990). To carry this burden, the non-moving party must set forth specific facts showing that there is a legitimate, triable issue. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The Court must view the record in the light most favorable to the nonmoving party, "indulging all reasonable inferences in that party's favor" while dismissing unsupported contentions, unreasonable inferences, and unfounded speculation. *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990); *Smith v. F.W. Morse & Co.*, 76 F.3d 413, 428 (1st Cir.1996). Those principles require a nuanced application when a motion for summary judgment depends upon statutory interpretation.

### B. Applicable Law

#### 1. Regulation of Automobile Business Practices Under Chapter 93B

Chapter 93B addresses unfair methods of competition in the automobile industry and protects dealers from coercive manufacturing practices. *Tober Foreign Motors, Inc. v. Reiter Oldsmobile, Inc.*, 376 Mass. 313, 322–23, 381 N.E.2d 908 (Mass. 1978). Chapter 93B prohibits manufacturers from granting new franchises "arbitrarily and without notice to existing franchisees." M.G.L. c. 93B(b)(4)(*1* ).

Although Chapter 93B sets forth factors that bear upon a court's determination of arbitrariness, it is silent as to what constitutes adequate notice. Chapter 93B § 4(3)(*1* ) articulates only broad procedural requirements with respect to notice, providing, in relevant part, that:

> Any manufacturer, distributor, wholesaler, distributor, branch or division, factory branch or division or wholesale branch or division which intends to grant or enter into an additional franchise or selling agreement, shall, at least *sixty days* prior to granting such franchise or entering into such agreement, give *written notice* of its intention to do so to each motor vehicle dealer with a franchise or selling agreement covering the same line make *within a twenty mile radius of the location where the business of the proposed franchise will be located. Such notice shall state the date on or after which such proposed franchise shall be granted or entered into.*

M.G.L. c. 93B § 4(3)(*1* ) (emphasis added).

Some other jurisdictions require the manufacturer to list, *inter alia*, the *specific* location of the new dealership, an explanation of the dealer's protest rights and a short and plain statement of the evidence the manufacturer intends to rely on in the "good cause" hearing. *See, e.g.*, Kansas St. Ann. § 8–2430(a); 63 Penn. Stat. § 818.27(a). Chapter 93B, on the other hand, specifically requires no more than that the manufacturers state the proposed

location of the franchise and the date it will be granted.

A dealer, for its part, may challenge the proposed franchise only if it submits "written notice of its intention to do so to such manufacturer... within thirty days from the date on which it received notice of such intention to grant or enter into the additional franchise or selling agreement." M.G.L. c. 93B § 4(3)(*1*). Pursuant to Chapter 93B, a dealer's obligation to notify a manufacturer of its intent to protest the grant of a new franchise is prompted by its receipt of sufficient written notice from the manufacturer.

## 2. The Purpose of the Notice Requirement

■ In the absence of a clear statutory definition of what constitutes adequate notice, the broader purpose of the notice requirement illuminates this Court's analysis. *See, e.g., Eli Lilly & Co. v. Medtronic, Inc.*, 496 U.S. 661, 669–74, 110 S.Ct. 2683, 110 L.Ed.2d 605 (1990). Following sound principles of statutory interpretation, notice functions to inform a dealer of its protest right and to provide a streamlined and efficient procedure to resolve such a protest.[1] Chapter 93B provides "an opportunity to test, before capital is expended or damage done, the question whether a proposed new dealership unfairly poaches on an existing dealer's territory." *Richard Lundgren, Inc. v. American Honda Motor Co., Inc.*, 45 Mass.App.Ct. 410, 414, 699 N.E.2d 11 (Mass.1998)

The animating purpose of Chapter 93B is, therefore, pragmatic, instituting procedures that encourage negotiation in lieu of litigation. *See Boston Car Co., Inc. v. Acura Auto. Div., American Honda Motor*

Co., 971 F.2d 811, 817 (1st Cir.1992). Considered together, the procedural requirements of Chapter 93B fosters a system whereby dealers and manufacturers may "resolve their dispute over their proposed dealership before it is actually established." *Richard Lundgren*, 45 Mass.App. Ct. at 412, 699 N.E.2d 11.

Informed by these broad principles, a court's assessment of the adequacy of notice is not determined by a clear calculus but rather by concepts of procedural fairness. Notice clearly depends upon technical considerations but a court's inquiry in gray area cases also hinges upon the context. *See Boston Car Co., Inc. v. Acura Auto. Div., American Honda Motor Co.*, 1991 WL 355149 (D.Mass.1991).

## 3. Mazda's 1999 Notice Letter

In the present case, it is undisputed that Mazda, ostensibly in good faith, attempted to give Gallo notice in March, 1999 that it intended to grant a new franchise on Route 9 (which Mazda identified as being in Westborough) within twenty miles of Gallo's dealership. If that notice was adequate, Gallo may not bring a Chapter 93B claim because it failed to issue a timely notice of intent to sue. *Boston Car*, 971 F.2d at 816.

Gallo contends that Mazda's written designation of Westborough rather than Shrewsbury as the location of the new dealership is a particularly significant error even though the Shrewsbury location is within a few hundred yards of the Westborough border. Several manufacturers, including Toyota, Jeep and Chevrolet, have dealerships in both Worcester and Westborough, but not Shrewsbury. Indeed,

---

1. In determining what constitutes sufficient notice, other jurisdictions interpreting statutes similar to Chapter 93B emphasize the purposes underlying the notice provision. *See, e.g., Bianchi Subaru, Inc. v. Commonwealth of Pennsylvania, State Board of Dealers and Salespersons*, 120 Pa.Cmwlth. 474, 548 A.2d 708, 710 (1988).

Gallo argues that if it had been aware that the new dealership was to be in Shrewsbury, the proximity to Westborough notwithstanding, it would have availed itself of the statute's protest procedures.

According to Gallo, the town in which the dealership is to be located, rather than its precise address, is dispositive in determining whether it will challenge a new franchise. To some extent, Gallo is, perhaps, making predictions about consumer behavior. A would-be car purchaser perusing dealership advertisements might consider, as an initial matter, the town in which a dealership is located rather than its precise address. Mazda's SOA system, at least in part, reflects that intuition because it is based upon zip codes that correlate to the town in which a dealership is located. The limited, relevant precedent similarly indicates that a manufacturer need only name the town of the new dealership to satisfy Chapter 93B. *Boston Car*, 971 F.2d at 816–17.

Mazda, for its part, argues that it gave Gallo adequate notice because its letter referred to the Walnut Street intersection and was, in any event, sufficient to promote a "pre-litigation dialogue" between the parties. It is undisputed that Gallo personnel failed 1) to review a map, 2) to discuss the proposed location and 3) generally to investigate the new dealership's location.

Here, Gallo argues that its failure to act is not controlling because there was inaccurate information in Mazda's letter and its reliance on that information is central to the instant dispute. Perhaps Gallo, with its economic self-interest in mind, ought to have to done more when it received Mazda's notice letter. The focal point of this Court's inquiry, however, is not economic rationality but whether Gallo had an obligation to file a timely intent-to-sue letter despite the inaccuracy in Maz-

da's notice. Gallo contends that it had no such obligation because Mazda's letter was misleading and precluded Gallo from making an informed and reasoned decision on whether to protest the new dealership.

In response, Mazda asserts that the precise location of the proposed dealership is immaterial. Rather, the central inquiry is whether the appointment of the new dealership, in view of economic conditions and the relevant market area, is arbitrary. Given that larger perspective, there is no practical difference, according to Mazda, between Westborough and Shrewsbury. Although the town folk of those communities may protest, Gallo itself explicitly asserts in its pleadings that central Massachusetts (as opposed to any particular town) is "over-dealered". Mazda's argument is unavailing, nevertheless, because a court's assessment of "arbitrariness" is multi-faceted and, under Chapter 93B, distinct from the notice inquiry. Notice, pursuant to that statute, is a procedural device that depends on content and delivery while arbitrariness is a legal concept implicating the merits of the lawsuit.

### 4. The Sufficiency of Mazda's Notice Under Chapter 93B

■ Construing all reasonable inferences in Gallo's favor, Mazda's notice was inadequate under Chapter 93B. Notably, that statute imposes neither an affirmative obligation on the dealer to investigate a proposed dealership nor ,a requirement of the manufacturer to offer a detailed disclosure in its notice letter. Rather, it merely sets forth rules governing the timing of notice and the intent-to-sue letter.

In the absence of clear statutory guidance, this Court must keep in mind the larger objectives of Chapter 93B to "protect franchisees from having to succumb to dictation by manufacturers pressing their own interests." *Tober*, 376 Mass. at 322,

381 N.E.2d 908. Mindful of that judicial instruction, Mazda is the party with the most information about the new franchise and it, alone, had an obligation to ensure that its notice was neither deficient nor in any way misleading.

Not surprisingly, this is a close case. In its letter, Mazda informed Gallo of the street intersection of the new dealership and common sense suggests that the short distance separating the proposed site from the Westborough–Shrewsbury boundary ought not be dispositive. Yet, assuming that Gallo did not protest the new franchise because, from a dealer's perspective, there is a significant difference between Westborough and Shrewsbury, Mazda's error in its notice letter is troublesome. While it is not clear if that error renders Mazda's notice null and void, Gallo has offered enough evidence to put into question its adequacy.

### 5. Mazda's July 13, 2001 Notice Letter

Although it is undisputed that Gallo had actual notice that the new dealership was located in Shrewsbury in March, 2001, its rights and obligations under Chapter 93B at that juncture are obscure. Upon learning of the Shrewsbury franchise, Nicholas Gallo discussed with Mazda his concern about the proposed dealership and Gallo's intention to take legal action. In order to promote negotiation, Gallo and Mazda recorded their positions in writing on June 21 and July 13, 2001, respectively.

It was not until July 20, 2001, however, that Gallo finally informed Mazda by letter that it intended to file suit. The issue is whether Gallo's filing of an intent-to-sue letter at that point (more than 30 days after it had actual, if not written, notice of the new dealership) comports with the strictures of Chapter 93B. Gallo contends that the 30–day window under Chapter 93B did not begin to run until it received Mazda's corrected notice letter on July 13, 2001.

Chapter 93B is silent as to whether a manufacturer's defective notice becomes effective once a dealer actually learns of the new franchise. Gallo's argument that its obligation to file an intent-to-sue letter was not prompted until Mazda sent it formal notice is logical because it limits the problem of proof; i.e. it obviates the need for guesswork. Although requiring a second formal letter from the manufacturer may be formalistic, it is consistent with the purpose of and procedures outlined by Chapter 93B.

### V. *Conclusion*

The instant case presents an issue of first impression. Gallo's contention that it failed to receive sufficient notice is marginally credible but, for the purpose of summary judgment, that is enough evidence to create a material issue of fact. Mazda's motion for summary judgment will therefore be denied.

### ORDER

For the foregoing reasons, the defendant's motion for summary judgment (Docket No. 18) is **DENIED.**

**So ordered.**