Whitehead, J.
BACKGROUND
Plaintiff, Commonwealth Motors (“Commonwealth”), is a franchisee of the defendant, Chevrolet Motor Division of General Motors (“GM”). The intervening defendant, Bill DeLuca Chevrolet (“DeLuca”), is another franchisee of GM. DeLuca has sought and received GM approval to relocate its operations twice in the last two years. Commonwealth alleges violations of the Massachusetts Dealer Franchise Act, G.L.c. 93B, §4(3) (1) in connection with those relocations and seeks to enjoin the latter relocation, pursuant to the provisions of that section. The matter is before the Court on defendants’ individual motions for summary judgment. For the reasons discussed below, the motions for summary judgment are allowed.
FACTS
Both Commonwealth and DeLuca are franchised through the Chevrolet Motor Division of GM. During all times relevant to the instant action, Commonwealth has been located at 135 Marston Street, in Lawrence. All of the DeLuca locations discussed herein are in Haverhill.
Initially, DeLuca operated at 76 South Main Street, which is 5.11 miles from Commonwealth. On August 23, 2000, GM notified Commonwealth by letter that it intended to approve a proposal by DeLuca to move its operation 1.75 miles, to 901 South Main Street, a location situated 3.44 miles from Commonwealth. This notice was given in accordance with Chevrolet’s Dispute Resolution Process. It read:
. . . General Motors is reviewing a proposal for the relocation of the dealer point currently known as Bill Deluca Chevrolet from 76 South Main St., Haverhill, MA, to facilities to be located at 901 S. Main St., Haverhill, MA, a distance of approximately 1.9 miles.
General Motors intends to approve this relocation proposal.
This notice is provided in accordance with Article 2.1 of the Chevrolet Dispute Resolution Process. However, since the proposed relocation is less than three miles from the current location, use of the process is not applicable. If you have any questions *573 regarding this matter, please feel free to contact your Market Area Manager.
Commonwealth did not protest the contemplated relocation under General Laws c. 93B, §4(3) (1) at the time that it received this notice. DeLuca, in fact, did move to 901 South Main Street on April 2, 2001.
On January 29, 2002, GM notified Commonwealth by certified mall that it had approved an additional DeLuca relocation, this time from the 901 South Main Street location to a site 1.14 miles away at 112 Bank Road. The Bank Road location is 4.05 miles from Commonwealth, further away from Commonwealth’s operation than was the location at 901 South Main Street. The notice read as follows:
. . . General Motors Corporation (“GM”) has approved a proposal for the relocation of Bill DeLuca Chevrolet, Inc., currently operating a Chevrolet dealership at 901 South Main Street in Haverhill, Massachusetts, to a new location at 112 Bank Street, also in Haverhill. The Deluca dealership had recently relocated to the 901 South Main Street location from 76 South Main Street. . .
GM’s approval will be effective no earlier than sixty (60) days after your receipt of this notice . . .
On February 26, 2002, Commonwealth notified GM that it intended to file a petition with the Superior Court to determine if the proposed relocation was arbitrary within the meaning of §4(3) (1). It commenced this action on May 9, 2002.
DISCUSSION
I.Standard of Review
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Cassesso v. Comm’r of Corr., 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that the record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
II.Statutory Framework
General Laws c. 93B §4(3)(1) is meant to regulate situations between motor vehicle manufacturers, distributors, and dealers in which additional franchisees are brought into the relevant market area of existing franchisees. The section renders it illegal for a manufacturer or distributor to:
arbitrarily and without notice to existing franchisees . . . grant or enter into a franchise or selling agreement to or with an additional franchisee who intends or would be required by such franchise agreement to conduct its dealership operations from a place of business situated within the relevant market area of an existing franchisee or franchisees representing the same line make . . . [emphasis added].
The statute lays out at length the criteria to be used in determining whether such a grant is arbitrary.
III.Application
As noted previously, in April of 2001, DeLuca relocated its operation from 76 South Main Street to 901 South Main Street, in Haverhill. It is undisputed that operations ceased at the previous location and that this move did not involve the addition of a second DeLuca Chevrolet franchise or the replacement of a Chevrolet franchise at 901 South Main Street. DeLuca’s franchise, with the approval of GM, closed operations at one physical location and reopened at another, some 1.75 miles away. Commonwealth contends that the franchise grant at 901 South Main Street was arbitrary and therefore in violation of §4(3) (1).
A. Safe Harbor Exemption
The defendants argue that §4(3) (1) does not apply to this move at all because, as a matter of law, the challenged relocation falls within an explicit exemption from the statute’s restrictions. The second paragraph of §4(3) (1) is commonly referred to as the “safe harbor” provision. It provides:
The appointment of a successor motor vehicle dealer at the same location as its predecessor or within a two-mile radius therefrom within one year from the date on which its predecessor ceased operations or was terminated, whichever occurred later, shall not be construed as a grant or the entering into of an additional franchise or selling agreement.
This provision protects a dealership from any challenge under the statute, regardless of relevant market area considerations.
The defendants claim that though this provision speaks of a “predecessor” and a “successor,” it should be read to include a dealership’s relocation to another site, with the dealership effectively being its own successor. Since the move from 76 South Main Street to 901 South Main Street was a move of less than two miles, the defendants assert that it is immune from review under §4(3)(1). In light of the clear language of the statute, the Court must disagree. The purpose of the exemption is relatively clear: to smooth out logistical difficulties which may occur when one franchisee shuts down, perhaps leaving the property tied up and unavailable for a subsequent franchisee. In such a situation, it is not considered infringement on nearby *574 market areas to replace the defunct franchisee with a new one located within two miles of where the defunct one previously existed. This is true even if, technically, the choice of a new location would step over the line into a third franchisee’s relevant market area. The goal is to allow maintenance of competition in the marketplace and reasonable flexibility regarding replacement locations.
The reading urged by the defendants, that a franchisee can be its own successor, has a markedly different practical economic effect on consumers and competitors. It would essentially allow any number of small moves, with the effect of eliminating the necessity of compliance with the statute’s broader requirements. If someone wished to move a franchise, for example, from Boston to the 1-495 corridor, the simplest way to avoid the statute’s overall requirements might be to move in a series of steps of less than two miles each, until he sat on the doorstep of a dealer who was not previously a competitor. This incongruous reading would defeat the statute’s underlying purpose and cannot be adopted. The Court finds that, as a matter of law, a franchisee seeking exemption from §4(3) (1) under the safe harbor provision is ineligible for that exemption if it is merely relocating its operation.
B. Relevant Market Area
Under §4(3) (1), dealers only have standing to challenge the proposed grant of a franchise by a manufacturer or distributor to another dealer if the grant would represent the addition of a new franchise to the protesting dealer’s “relevant market area” or RMA. Grants outside of the RMA of a particular dealer or relocations of pre-existing dealerships within the RMA of a particular dealer do not confer standing to that dealer under §4(3) (1). Only new grants within the RMA are seen as potentially infringing on an established dealer’s reasonable expectations of its market share. Such new grants are made subject to court scrutiny under §4(3) (1) to prevent arbitrary actions on the part of the manufacturer or distributor from unfairly impacting established dealers.
The statute provides the following term-of-art definition for the RMA of a motor vehicle dealer with respect to any given line make:
[T]he more narrowly defined and circumscribed geographical area immediately surrounding its existing dealer location within which it obtained, during ... the three-year period immediately preceding the date of [the] notice of intent to grant or enter into an additional franchise or selling agreement ... at least two-thirds of (i) its retail sales of new motor vehicles of said line make or (ii) its retail service sales[.]
This determination is to be made, “regardless of whether its franchise or selling agreement delineates or establishes a specific area of responsibility or whether, by custom or usage, a specific area of responsibility has been established!.]” Id.
In American Honda Motor Co. v. Bernardi’s, Inc., the Supreme Judicial Court offered further guidance as to how the protesting dealer’s RMA should be drawn:
[T]he Legislature intended the shape of a dealer’s “relevant market area” to be a geographic area generally circular in shape, although not a perfect circle, and contiguous to the existing dealer’s location . . . The word “immediately,” which is used to modify the word “surrounding,” also has significance; its plain meaning instructs that the circular boundary be drawn around the smallest geographic area (as determined by statistical data) closest to the existing dealership, with the dealership in the center of the circular boundary.
432 Mass. 425, 430-31 (2000). The Supreme Judicial Court recognized that expert methodology would likely vary as to the exact approach to computing and platting the data regarding two-thirds of a dealer’s new vehicle sales or service sales. Id. at 434 (dispute as to whether zip code information should be used to compute the relevant sales data before platting). While the Court accepted the need to rely on expert testimony to resolve disputes as to relevant market area, it emphasized that, “the methodology must comport with our interpretation of the definition of ‘relevant market area.’ ” Id.
Because standing to challenge a relocation under §4(3) (1) is not available unless an additional franchise within the RMA of the protesting franchisee is contemplated, it is imperative that Commonwealth show that the move from 76 South Main Street to 901 South Main Street was a move from outside Commonwealth’s RMA to within its RMA. The expert retained by Commonwealth, James F. Drury, has managed to reach such a conclusion.
An expert’s testimony, however, is not necessarily sufficient to resolve the issue, because as explained in American Honda, it is the role of the Court to determine if the expert testimony comports with the Supreme Judicial Court’s definition of RMA, regardless of the soundness of the methodology used to collect the data. 432 Mass. at 434. Drury’s affidavit attests that in approaching his work, he reviewed the statute and two relevant cases, both American Honda (432 Mass. 428) and a federal case involving the same underlying controversy. American Honda Motor Co. v. Bernardi’s, Inc., 188 F.Sup.2d 27 (D.Mass. 2002). However, Drury did not adhere to the law when drawing his conclusions that there was an infringement of Commonwealth’s RMA.
The expert’s first deviation from the statutory prescriptions regarding determination of the RMA arose due to a conflict between the parties as to when notice of the intent to add the new franchise to the RMA was actually received by Commonwealth. The defendants claim notice was given on August 23, 2000. Commonwealth claims it never received notice at all before the move was accomplished, because the letter of August *575 23, 2000 was statutorily deficient. The statute requires that the RMA be based on data for the three years immediately preceding the date of notice. As a result of the factual dispute between the parties, the expert considered four years of data, rather than three, in order to accomplish his mapping of sales. Use of four years of data would not be acceptable at trial, but given the factual dispute between the parties as to the timing of notice, the Court does not find it fatal to the admissibility of the expert’s testimony. The ultimate mapping included examples under each relevant three-year period, both of which the expert found supported Commonwealth’s position that 76 South Main Street, DeLuca’s initial site, was outside of Commonwealth’s RMA.
After compiling Commonwealth’s market data utilizing census tract maps and geo-positioning, the expert then visually adjusted the placement of the RMA’s center point to account for Commonwealth’s marketing and advertising strategies:
In analyzing Commonwealth’s business in order to determine its RMA, we also included the actual marketing strategy and effort of Commonwealth as evidenced by its marketing emphasis and advertising expense incurred during the four-year period from 1998 through 2001.
Aff. of J. Druiy at 8. Inclusion of such extraneous materials to adjust the placement of the center point of the RMA is specifically forbidden under the statute. It must be emphasized again that §4(3)(1) provides that the determination of the RMA must be made “regardless of whether ... by custom or usage, a specific area of responsibility has been established[.]” While issues of marketing or advertising budgets are relevant to the development of market strategies for further expenditures, they are not relevant to the application of this statute.
The consequence of the consideration of these impermissible factors is the creation of an RMA in obvious violation of the statutoiy language. Because of the visual adjustment made by Druiy to the data retrieved in order to account for marketing and advertising strategies, the protesting franchisee is no longer located anywhere near the center of the RMA.[1] Though hard to describe in words, the location of Commonwealth within the RMA prepared by its expert is approximately hallway between the visual center of the circular shape and its outer edge. It is not necessary to enter into a Daubert/Lanigan analysis regarding the “reliability" of Druiy’s testimony as defendants suggest. Quite simply, Druiy’s conclusions concerning relevant market area are incompetent because they are based on a misapplication of the criteria required by law.
Using the same data as Commonwealth, the defendants’ expert, John G. Frith, constructed an RMA for Commonwealth’s operation which shows DeLuca’s initial location, 76 South Main Street, to be well within its boundary. Supp. Aff. of J. Frith at 7. Frith applied the statute as required, absent impermissible “market reality” considerations. Drury, Commonwealth’s expert, admitted in deposition that without consideration of the impermissible factors discussed above, any construction of an RMA for Commonwealth would necessarily include DeLuca’s 76 South Main Street location. J. Druiy Deposition Tr. at 158-63.
Without Druiy’s affidavit, and in light of Frith’s deposition testimony and affidavits, Commonwealth is unable to establish standing to protest DeLuca’s move from 76 South Main Street to 901 South Main Street. Both locations were within Commonwealth’s RMA and, therefore, the move does not constitute the establishment of an additional franchise within Commonwealth’s RMA under §4(3) (1).
Commonwealth does not contend that DeLuca’s current proposed move from 901 South Main Street to 112 Bank Road would be subject to §4(3)(1) on its own. It is acknowledged by all parties that such a move is between two locations which both fall within Commonwealth’s RMA and therefore does not trigger application of the statute vis-a-vis these parties. Commonwealth, however, urges that this proposed relocation is part of a unified relocation involving both the initial move from 76 South Main Street, which occurred in April 2001, and the more recent proposed relocation.
Both defendants term this an impermissible aggregation of claims. GM in particular asserts that the ability to protest serial relocations would undermine the purpose of the law: to “give manufacturers and dealers an opportunity to test, before capital is expended or damage done, the question whether a proposed new dealership unfairly poaches on an existing dealer’s territory.” Richard Lundgren, Inc. v. Honda Motor Co., Inc., 45 Mass.App.Ct. 410, 415 (1998). The Court agrees. Commonwealth seems to claim that a proposed move to an undesirable location within its RMA should not begin the clock ticking on its time for protest, or that it should get another protest window if the dealer at the undesirable location all along planned to relocate to another area in its RMA which might be more competitive. This reading of the statute would undermine the finality §4(3) (1) seeks to provide. The initial move into a dealer’s RMA is the triggering event that confers standing for a limited time; later moves within the same dealer’s RMA do not renew standing for that dealer since its RMA at that point would in large part coincide with the relocating dealer’s. Since Commonwealth asserts that the move to 901 South Main Street was a move from outside its RMA to within it, at the time of that move Commonwealth was on notice that if it let its protest window pass without action, DeLuca would be permanently established within its RMA and it would have no further recourse.
*576 Regardless, even a unified relocation would not be subject to §4(3)(1) for the reasons already discussed. Specifically, all of DeLuca’s sites relevant to this action have been within the RMA of Commonwealth. Commonwealth therefore had no standing to protest the original move and has no standing to protest the current proposed relocation because neither constitutes the institution of an additional dealership franchise within Commonwealth’s RMA under any reading of the facts.
C. Adequate Notice
Even if the move from 76 South Main Street to 901 South Main Street in April 2001 constituted the addition of a new franchise to Commonwealth’s RMA, Commonwealth must justify why a complaint was not filed with the Superior Court until May 2002.
Section 4(3) (1) requires that the manufacturer or distributor intending to grant an additional franchise or selling agreement, at least sixty days prior to granting such:
give written notice of its intention to do so to each motor vehicle dealer with a franchise or selling agreement covering the same line make within a twenty mile radius of the location where the business of the proposed franchise will be located. Such notice shall state the date on or after which such proposed franchise shall be granted or entered into.
No specific form is provided as to what constitutes adequate notice. It seems that notice must be in writing and must state the intent to grant or enter into such an agreement, as well as the date on or after which such the distributor or wholesaler intends to give authorization.
Commonwealth urges that it never received statutorily sufficient notice from GM. It acknowledges the receipt of a letter both by hand and by certified postal delivery, on August 23, 2000, regarding DeLuca’s move from 76 South Main Street to 901 South Main Street, in which letter GM informed Commonwealth that, “General Motors intends to approve this relocation proposal.” However, Commonwealth asserts that the notice is insufficient on two grounds.
First, Commonwealth asserts that the failure to reference §4(3) (1) makes the notice ambiguous, deficient, and misleading. The Court notes that §4(3)(l)’s notice requirement does not require reference to the statute, and therefore lack of such a reference cannot be viewed as a deficiency. The intent of the statute’s notice requirement is to make any dealer within twenty miles aware of upcoming changes in the regional market area which some might be eligible to protest, not to advise dealers as to their legal recourse.
Second, Commonwealth claims that the failure to specify an “on or after” date at least sixty days into the future is fatal to the notice. Commonwealth is mistaken. This Court finds that in the absence of such a statement of time, the recipient must presume it has at least sixty days to exercise its rights. Such an on or after date can be implied through knowledge of the requirements of provisions of §4(3) (1). The dealer or wholesaler would be estopped from claiming otherwise, and a claim filed within the sixty-day window would not be premature. In fact, Commonwealth had over seven months between receiving the notice referenced above on August 23, 2000 and DeLuca’s eventual move in April of 2001.
Additionally, Commonwealth has admitted, through the affidavit of Charles F. Daher, its sole stockholder, officer, and director, that it was aware of rumors that DeLuca planned such a move as early as July 1997. Aff. of C. Daher at 6. Rumors continued until Commonwealth received the letter from GM on August 23, 2000. Id. Commonwealth claims it relied upon the advice of a GM representative, Michael Keating, to the effect that protesting at that time would be futile. Such reliance was ill-advised. Neither GM’s nor its representative’s opinion as to the intractability of GM’s position regarding the relocation of DeLuca is relevant to the application of §4(3) (1), or to the issue of whether or not Commonwealth was required to assert whatever rights it thought it had under the law in a timely fashion.
Because Commonwealth failed to exercise its rights under §4(3)(1) within the time allotted after receiving adequate notice, its claims as regards DeLuca’s move from 76 South Main Street to 901 South Main Street would be time-barred, even if it had established that the move constituted the addition of a new franchise into Commonwealth’s RMA.
ORDER
For the foregoing reasons, it is hereby ORDERED that defendants Chevrolet Motor Division of General Motors Corporation and Bill DeLuca Chevrolet, Inc.’s Motions for Summary Judgment as to all counts are ALLOWED.

 Commonwealth’s expert asserts that, “A circular shaped market cannot have a geometric center because the circular shape may, itself, be somewhat irregular.” Aff. of J. Drury at 7. While this may be hue, American Honda does not require that the dealership be located at a “geometric center,” but merely “in the center of the circular boundary.” 432 Mass. 430-31. A common sense definition of a center applies. One definition of center which appreciates humanity’s commonsense capacity is, “the approximate middle point, place, or part of anything.” Webster’s New World Dictionary of the American Language, 1980. Such a definition does not require scientific precision and there likely will be some variation in reasonable expert opinion on the exact placement of the protesting franchisee within the circular boundary. This, however, does not allow an assertion that the use of the term “center” by the Supreme Judicial Court is non-sensical and justifies a return to principles of equity in contradiction of clear statutory language.